UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. |
| | : | |
| $21,900.00 IN UNITED STATES CURRENCY, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| [CLAIMANT:  MICHALE WILLIAMS] | : | April 10, 2019 |

VERIFIED COMPLAINT OF FORFEITURE

Now comes Plaintiff, United States of America, by and through its attorneys, John H. Durham, United States Attorney for the District of Connecticut, and David X. Sullivan, Assistant United States Attorney, and respectfully states that:

1. This is a civil action in rem brought to enforce the provision of 21 U.S.C. § 881(a)(6), which provides for the forfeiture of proceeds traceable to the exchange of controlled substances in violation of the Controlled Substances Act, 21 U.S.C. §§ 801 et seq.

2. This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 and 1355.  Venue is appropriate in the District of Connecticut by virtue of 28 U.S.C. § 1395(b).

3. The Defendant is $21,900.00 in United States Currency ("Defendant Currency").

4. The Defendant Currency is located within the jurisdiction of this Court.

5. On January 14, 2019, Michale Williams submitted an administrative claim of ownership to the Defendant Currency.

1

**Background of Investigation**

6. On October 27, 2018, Michale Williams ("Williams") arrived at Bradley International Airport in Windsor Locks, CT to board a flight to San Francisco, CA. Williams arrived at the ticket counter at 4:32 a.m. to purchase a one-way ticket for a flight boarding at 5:25 a.m.

7. Through their training and experience, law enforcement knows that this would be a very small window of time to get through security screening to catch a flight that boarded so soon after Williams purchased his ticket. Law enforcement is familiar with the methods in which bulk cash smugglers attempt to pressure airport screeners to clear passengers for flight by arriving at security screening so close to their departure time.

8. At 4:45 a.m., during the airport security's X-Ray screening process, an anomaly was noticed within Williams' carry-on bag. An unidentified bulk mass was located within Williams' clothing. This discovery led to law enforcement's initiating a hand search of the carry-on luggage. During the hand search, law enforcement located bulk cash located within Williams' rolled up sweatpants.

9. Williams was asked by law enforcement how much money was located within the bag and he replied, "$19,000." When asked a second time by law enforcement how much currency was in his bag, Williams this time replied, "$20,000."

10. Law enforcement then began an interview of Williams in a public area of the airport. During this public interview, Williams was not restrained in any way. Further, Williams was advised he was free to leave at any time, and that he was free to stop answering questions as

well.   Before being interviewed, a trained law enforcement narcotics detection dog did a free air search and alerted to the presence of narcotics on the Defendant Currency, which was located on top of a table with Williams' bag and clothes.  The canine alerted to the narcotics odor without being given a command to do so.

11. Williams told law enforcement that the Defendant Currency was his and totaled $20,000.  Williams told law enforcement that he kept the money rolled up in his sweatpants so that he would not be robbed.  When asked by law enforcement who would rob him at the airport, Williams replied, "anybody."

12. Williams told law enforcement that the Defendant Currency represented savings from over the years.  Williams also said that he has not worked in over two years.  He said that he was previously a truck driver and owned a trucking company called "DA GREESE TRUCKING."[1]  Williams told law enforcement that he did not sell the trucking company, rather he just "stopped doing it." Williams told law enforcement that he lives off of his savings and the rent he collects from a five-unit apartment building that he claimed to own.

13. Williams told law enforcement that he was travelling to San Francisco with his "side piece," Jodi Montana ("Montana").  He further explained that the Defendant Currency was to be used for the two of them "to party in San Francisco."   Williams said that Montana had already boarded the airplane but she was located a short time later in the terminal of the airport.

---

[1] An online search of the Connecticut Secretary of State's database revealed that DA GREESE TRUCKING is not registered as a business entity either currently or in the past.

3

14.     When law enforcement located Montana, they asked if they could speak to her and she agreed.  Law enforcement asked her what her relationship was with Williams and she replied, "we bone."  Law enforcement asked Montana if they could run her bag through the X-Ray machine and she agreed.  Law enforcement noticed an anomaly in Montana's bag and asked her if they could search it and she consented.  $1,900 in United States Currency was located in a rolled up pair of pants within the bag.  Montana told law enforcement that the cash belonged to Williams.  She claimed that he had given her the $1,900 before they got to the airport.  Montana signed an abandonment form with law enforcement acknowledging that the money did not belong to her.

15.     Montana told law enforcement that she was travelling to San Francisco with Williams and an individual named McKinley George ("George").  Montana said George was a friend and cousin of Williams.  Law enforcement determined that George had departed the airport when Williams was being interviewed after the $20,000 was discovered in his carry-on luggage.

16.     Law enforcement next asked Williams about George.  Williams told law enforcement that George usually travelled with him when he went to the west coast.  Williams also told law enforcement that the $1,900 located in Montana's bag was not his but rather Montana's money.  When law enforcement offered to let Williams sign an abandonment form as to the $1,900, he declined.

17.     Law enforcement knows through training and experience that narcotics smugglers will often travel in a group and each will carry an amount of bulk cash to their destination in

4

order to conceal how much money they are actually travelling with.  Upon reaching their destination, in this case California, the smugglers will then consolidate the currency, make a narcotics purchase, and arrange for the shipment of the drugs back to Connecticut.

18. The two seized amounts of United States Currency from Williams and Montanas' carry-on bags were brought to a financial institution where after they were officially counted, they were converted into a bank check totaling $21,900.00.

19. A check with the State of Connecticut Department of Labor revealed that Michale Williams had no reported wages for the last 16 quarters.

20. Based on the above information, it is believed that $21,900.00 in United States Currency constitutes proceeds from the illegal sale and distribution of narcotics and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

21. The Defendant Currency represents proceeds traceable to the exchange of controlled substances in violation of the Controlled Substances Act, 21 U.S.C. §§ 801 et seq., and is, therefore, subject to forfeiture to the United States of America pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States of America prays that a Warrant of Arrest In Rem be issued for $21,900.00 in United States Currency; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the property to be condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

   /s/ John B. Hughes
JOHN B. HUGHES
CHIEF, CIVIL DIVISION
ASSISTANT U. S. ATTORNEY


*/s/ David X. Sullivan*
DAVID X. SULLIVAN
ASSISTAN U.S. ATTORNEY
157 CHURCH STREET, 25TH FLOOR
NEW HAVEN, CT  06510
(203) 821-3700
FEDERAL BAR # ct03793
David.Sullivan@usdoj.gov

DECLARATION

I am a Task Force Officer for the United States Customs and Border Protection, and the agent assigned the responsibility for this case.

I have reviewed the contents of the foregoing Verified Complaint of Forfeiture and the statements contained therein are true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 10th day of April, 2019.

    /s/ Zachary Kashmanian
ZACHARY KASHMANIAN
TASK FORCE OFFICER
U.S. CUSTOMS AND BORDER PROTECTION